**STATE of Tennessee, Appellee,**

v.

**Charles M. RYAN, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 19, 1988.

Permission to Appeal Denied by Supreme Court Aug. 29, 1988.

---

Lionel R. Barrett, Jr., Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Richard A. Fisher, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

JONES, Judge.

The defendant, Charles M. Ryan, was convicted of procuring the burning of a dwelling and filing a false claim to defraud an insurance company by a jury of his peers. The jury sentenced the defendant to serve a term of not less than three nor more than six years in the Department of Correction for the procurement of arson; and the jury sentenced the defendant to pay a fine of $5,000.00 for the offense of filing a false claim to defraud an insurance company.[1] The trial court subsequently suspended the defendant's sentence for procuring arson and placed him on probation for a period of five years.

This is the second appeal as of right in this cause.

Initially, the trial court entered an order granting the defendant a new trial on the ground the State failed to establish the defendant's guilt beyond a reasonable doubt. The State filed a petition to reconsider[2] in which the State contended the trial court should have entered a judgment of acquittal pursuant to Rule 29, Tenn.R. Crim.P., rather than grant the defendant a new trial. The attorneys who initially represented the defendant agreed that the proper procedure would be to enter a judgment of acquittal rather than grant a new trial; and counsel moved the trial court to amend its order and enter a judgment of acquittal. The trial court subsequently entered a judgment of acquittal.

The district attorney general appealed as of right to this Court from the judgment of the trial court acquitting the defendant of both offenses. This Court set aside the judgments of acquittal and ordered the trial court to enter judgments of conviction on both verdicts. *State v. Charles M. Ryan*, Davidson County No. 84–229–III, opinion filed at Nashville October 18, 1985. The Supreme Court denied the defendant's application for permission to appeal on March 3, 1986.

---

1. These offenses occurred on July 23, 1979, before the enactment of the Tennessee Criminal Sentencing Reform Act of 1982. Consequently, the jury as opposed to the trial judge was required to establish the punishment for the offenses.

2. It should be noted that there is no provision in the Tennessee Rules of Criminal Procedure for a "petition to reconsider" or a "petition to rehear." See *State v. Kassie L. Kinkade*, Shelby Criminal No. 93, C.C.A. at Jackson, decided May 23, 1983; *State v. Mike Giardono*, Sumner Criminal No. 85–114–III, C.C.A. at Nashville, opinion filed December 12, 1986 [available on WESTLAW, 1986 WL 14033].

When this cause was remanded to the trial court, the defendant filed a second motion for a new trial. The motion alleged that the evidence contained in the record was insufficient, as a matter of law, to support the defendant's convictions. It was further alleged that the attorneys who initially represented the defendant were ineffective because they moved the trial court to rescind its order granting the defendant a new trial and enter a judgment of acquittal.

In this Court the defendant contends that (a) he was denied the effective assistance of counsel, and (b) it was error to permit the assistant district attorney general to cross-examine him as to whether he had read a transcript of the out-of-court statements made by two individuals who did not testify at the trial.

■ When an accused seeks to vitiate a conviction on the ground an attorney's representation was ineffective, the accused must prove by a preponderance of the evidence that (a) the services rendered or advice given by counsel fell below "the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975), and (b) the unprofessional conduct or errors of counsel "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 697 (1984); *Williams v. State*, 599 S.W.2d 276, 279 (Tenn.Crim.App.1980). When defense counsel asked the trial court to rescind its previous order and enter a judgment of acquittal, counsel simply sought to have the trial court conform its judgment to the rules of procedure and the law. This conduct did not deprive the defendant of his constitutional right to the effective assistance of counsel. Nor did it result in prejudice to the defendant.

■ Once the trial court determined the State failed to establish the defendant's guilt beyond a reasonable doubt, the defendant could not be retried for these offenses because retrial was barred by the double jeopardy clause of both the United States and Tennessee Constitutions. *Overturf v. State*, 571 S.W.2d 837 (Tenn.1978).

See *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). As our Supreme Court said in *Overturf v. State:* "... [W]hen the evidence is insufficient to warrant a conviction the trial judge has no alternative but to ... [enter a judgment of acquittal]; in such a situation, it is no longer permissible for him to deny the motion for a judgment of acquittal and, after verdict, to grant a new trial instead" 571 S.W. 2d at 839. Later, our Supreme Court ruled that a trial judge cannot set aside a jury verdict based upon the weight of the evidence. *State v. Johnson*, 692 S.W.2d 412, 413–414 (Tenn.1985).

This issue is without merit.

The defendant also contends that the trial court committed error of prejudicial dimensions when it permitted the assistant district attorney general to cross-examine him regarding the out-of-court statements made by a co-defendant and an employee of the co-defendant. Neither person testified during the trial.

The defendant testified that his former wife, Sandy, had asked that he pay her $5,000.00 following their separation. She threatened to tell the police that the defendant had burned his home if he failed to pay her the money. Also, she apparently indicated that her brother, Dennis, was implicated in the burning of the defendant's home.

According to the defendant, Sandy told her brother about statements the defendant supposedly made to her; and she told the defendant about statements her brother supposedly made to her. In a telephone conversation the defendant told Sandy: "Dennis and I talked about it a while ago. This is Dennis' idea that the three of us ought to sit down and see who's telling a lie. It don't make no difference where it is at, just see who is telling a lie." The meeting never took place. During the cross-examination of the defendant the following colloquy took place between the assistant district attorney general and the defendant regarding the proposed meeting:

Q  Now, you have led the jury to believe that the purpose of the meeting, and that Sandy wouldn't come to the meeting—was to clear the air of these accusations? Sir, weren't you fully aware before you testified yesterday that Dennis Harding [a co-defendant], under oath, and Linda Crestwell [an employee of Harding] on tape and under oath, had recognized your involvement and concealment of the washer, dryer, the stereo and the television?

A  No, sir, I am not knowledgeable of that fact—

Q  You have never read—

A  —If there is a fact.

Q  You mean you have never read Dennis' deposition?

\*    \*    \*    \*    \*    \*

Q  And you are unaware then, sir, and I will ask it again—you are telling the jury you are unaware that Dennis Harding said that you assisted him in concealing these assets?

A  I don't believe that was your original question.  I believe you asked me about a tape recording.  I am aware that Dennis Harding has since made those statements after he was offered immunity by the State, yes sir.  And I know he received some funds from the insurance company.

Q  Well, did you take an opportunity to read the taped transcript or listen to the taped recordings that were submitted to counsel here at the beginning of this trial?

A  Yes, sir, but I don't recall seeing the one in which Dennis Harding was making these statements.

Q  And Linda Crestwell recognizes that—most certainly, "Chuck said we need to get rid of this stuff"—

\*    \*    \*    \*    \*    \*

Q  Were you aware of the tapes that you listened to, the tapes that there were transcripts of?

A  I have listened to certain tapes; these are not all the tapes.  Some of these tapes were confiscated from my car, there are some that are here and there are some that are not here.  I have been advised Dennis has already made statements accusing me in some areas of his case, yes sir.

Q  And when you testified yesterday that the purpose of the meeting was to straighten Sandy out, actually the purpose of the attempted meeting was to make sure that Sandy wasn't going to testify against you and against Dennis, wasn't it?

A  No, sir.

Q  The purpose of your meeting was a continuation of your effort to stay close to Sandy to keep her from talking to the authorities, or she had already talked to them, from testifying against you?

A  No, sir.

Q  You were attempting to use her brother and his girlfriend to lure Sandy back into an environment where you could put more pressure on her?

A  No, sir.

▇▇▇▇  The State of Tennessee concedes that the trial court committed error in permitting the assistant district attorney general to cross-examine the defendant regarding the out-of-court statements made by Dennis Harding and Linda Crestwell.  However, the State contends this error was harmless because the evidence of the defendant's guilt of filing a false claim to defraud an insurance company—the offense to which the colloquy relates—is overwhelming.  We agree.

The evidence that the defendant filed a false insurance claim is indeed overwhelming.  Most of the personal property the defendant claimed was destroyed by the fire never existed, had been removed from the house either before or after the fire, or the value of the property was extremely exaggerated.  Guns, which had been removed from the house, were later recovered from the defendant's vehicle.  A washer and dryer, television set, and stereo end tables, which had been removed from the residence after the fire, were seen inside the trailer of Dennis Harding.  An arson investigator stated that a washer and dryer had been taken from the utility room of the residence between the first and sec-

ond fires. The defendant told a former wife that he had given most of the furniture to Dennis Harding. In summary, this error was harmless beyond a reasonable doubt. Tenn.R.App.P. 36(b); Tenn.R.Crim.P. 52(a); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We cannot say this error more probably than not affected the judgment or would result in prejudice to the judicial process. Tenn. R.App.P. 36(b).

The defendant also contends that the utilization of the statement given by Dennis Harding, a co-defendant, violated the rule created by the United States Supreme Court in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The record reflects that the contemporaneous objection made by trial counsel was not predicated upon the *Bruton* rule. Furthermore, the issue as raised in the motion for a new trial did not encompass the rule enunciated in *Bruton;* and no effort was made to raise this issue when the second motion for a new trial was filed in the cause. Consequently, this ground has been waived. Tenn.R.App.P. 36(a); Tenn.R.App. P. 3(e). See *State v. Brock,* 678 S.W.2d 486, 489–490 (Tenn.Crim.App.1984); *State v. Galloway,* 696 S.W.2d 364, 368 (Tenn. Crim.App.1985).

This issue is without merit.

The judgment of the trial court is affirmed.

DAUGHTREY and REID, JJ., concur.