**STATE of Tennessee, Appellee,**

v.

**Kevin Blair McPHERSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 24, 1994.

Permission to Appeal Denied by Supreme Court June 20, 1994.

---

Charles W. Burson, Atty. Gen. & Reporter, Eugene J. Honea, Asst. Atty. Gen., Nashville, Joseph D. Baugh, Dist. Atty. Gen., Ronald L. Davis, Asst. Dist. Atty. Gen., Franklin, for appellee.

David L. Raybin, Edward M. Yarbrough, Nashville, for appellant.

## OPINION

JONES, Judge.

The appellant, Kevin Blair McPherson, was convicted of aggravated rape, a Class A felony, by a jury of his peers. The trial court found that the appellant was a standard offender and imposed a Range I sentence of fifteen (15) years in the Department of Correction. On appeal the appellant presents eleven issues for review.

The judgment of the trial court is affirmed.

The victim, a native of Waverly, Tennessee, graduated from high school in May of 1991. She moved to Franklin, Tennessee after graduation to live with her cousin in an

apartment complex known as The Landings. The victim was seeking employment and planned to attend school in the fall.

The appellant resided in Brentwood, Tennessee with a companion. He became friends with people who resided at The Landings; and his friends permitted him to use The Landings facilities. The appellant met the victim while using The Landings facilities.

On the afternoon of July 1, 1991, the appellant, the victim, and several others were poolside when they agreed to eat the evening meal together at a local restaurant. When it appeared that the victim would be paired with the appellant, she expressed apprehension to a mutual friend. The friend advised her not to worry, that at least one other person would be going with them to the restaurant.

When the appellant arrived at the victim's apartment, he was alone. The victim, laboring under the impression that another person would be riding with them, left with the appellant. However, after they left the apartment, the appellant told her that it would just be the two of them.

The appellant and the victim went to the restaurant as planned and had dinner with the mutual friends. They were the last to leave. It appears that the appellant was trying to get the victim intoxicated. However, the bartender did not make the drinks she consumed with an intoxicating beverage. After they left the restaurant, the appellant took the victim to a bar. He wanted to obtain a credit card that he had previously left to pay for his bar tab. The appellant attempted to hold the victims hand as they approached the bar, but she rebuffed him.

As the appellant approached The Landings, he turned into a gravel road leading to a water tower. When the victim asked why he had turned on the gravel road, the appellant told the victim that he had to relieve himself. The area was secluded due to the trees and weeds surrounding the hillside. The appellant left the vehicle for a few minutes.

When the appellant returned, he ordered the victim to exit the truck. She refused.

The appellant grabbed her hair, pulled her out of the truck, and began kissing her. The appellant subsequently pinned the victim against the truck so that she could not use her hands. When the appellant began screaming, the appellant grabbed her neck and choked her until she quit. The appellant told her to "shut up or [he] would choke [her] to death." The appellant made the victim reenter the truck and said: "You better do what I say because I will hurt you." Once she was in the truck, she obtained mace from her purse and sprayed the appellant. He wiped the mace off and placed his hands over the victim's face. The mace on the appellant's hands affected the victim.

The appellant removed the victim's pants and undergarments and pulled her blouse above her breasts. He made her pose while he took a photograph of her lying on the front seat of the truck. He apparently took a second photograph while she was leaning over the seat of the truck. The appellant subsequently digitally penetrated the victim's vagina and rectum. When the victim screamed from the pain that she was experiencing, the appellant poured suntan lotion into her vagina and on his reproductive organ. The appellant ejaculated twice upon the victim's body. The victim subsequently escaped from the appellant. The Franklin Police Department was notified of the crime.

The encounter with the appellant left scratches on the victim's neck, a bruise on her leg, and a "busted lip." In addition, a scab on her knee was broken when the appellant pressed against her. The scab, a carpet burn, began to bleed.

The Franklin Police Department notified the law enforcement agencies in Williamson County that the appellant was wanted for questioning. A description of the appellant and his truck were contained in the communication. A Brentwood police officer, who had heard the broadcast, noticed a truck that matched the description of the truck contained in the broadcast. The officer stopped the truck. It was discovered that the appellant, the driver of the truck, was the person wanted for questioning by the Franklin Police Department. A photograph depicting the nude body of the victim was found on the

front floorboard. A subsequent inventory revealed a polaroid camera. The truck reeked with the odor of coconut oil, which is used in suntan lotions. The shirt the appellant was wearing had a blood stain, which was imprinted on the shirt when the appellant pressed against the victim's knee.

The appellant testified that the victim had consented to park with him. They began to kiss and engaged in "heavy petting." He denied that he penetrated the victim's vagina or rectum. He also denied having ejaculated and maintained that he had been unable to have an erection that evening.

## I.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R.App.P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn.Crim.App.1990).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Herrod*, 754 S.W.2d 627, 632 (Tenn.Crim.App.1988).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn.Crim. App.1987). In *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), the Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace*, 493 S.W.2d at 476, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *State v. Matthews*, 805 S.W.2d at 780.

The appellant contends that the state failed to prove "bodily injury," an element of aggravated rape. He argues that this Court should set aside his conviction for aggravated rape and find him guilty of rape.

According to the state's theory, the appellant (a) sexually penetration the victim in an unlawful manner and (b) inflicted "bodily injury" to the victim. Tenn.Code Ann. § 39–13–502(a)(2). The phrase "bodily injury" is defined as "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or [the] impairment of the function of a bodily member, organ, or mental faculty." Tenn.Code Ann. § 39–11–106(a)(2). The state proved both elements; and the jury by its verdict accredited this evidence.

The victim testified, and the jury believed, that she resisted the appellant. However, the appellant overpowered the victim, threatened to harm her, and digitally penetrated her. The state established that the appellant caused the victim to suffer excruciating pain, he caused a bruise on her leg, he broke the scab on her knee causing it to bleed, he scratched her neck when he choked her, and he injured her lip. This established "bodily injury" within the meaning of the statute. *State v. Locke*, 771 S.W.2d 132, 135–136 (Tenn.Crim.App.1988), *per. app. denied*, May 8, 1989 (a scratch inflicted by the ac-

cused constituted a "bodily injury" within the meaning of the statute).[1]

This Court concludes that there is sufficient evidence contained in the record to support a finding by a rational trier of fact that the appellant was guilty of aggravated rape beyond a reasonable doubt. Tenn. R.App.P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

This issue is without merit.

## II.

The victim became emotionally upset while relating the circumstances surrounding the rape. The assistant district attorney general told the victim to "[s]top and take a couple of deep breaths." The trial court declared a short recess so that the victim could regain her composure. When the trial commenced after the recess, defense counsel told the court:

> Following the testimony before the break and before the jury retired from the room, Ms. Terry Hamn, the victim-witness coordinator for the District Attorney's office, came up through the rails and ... up to the witness stand and started hugging the witness right in front of the jury. And I move for a mistrial.

The trial court overruled the motion. However, the court admonished Ms. Hamn not to repeat her conduct. No curative instruction was sought by the appellant; and the trial court did not give such an instruction *sua sponte.* When the motion for a new trial was heard, the trial court commented:

> The only ground that really I say, bothers me—and it does bother me—is the one raised about the victim/witness coordinator running into the courtroom and hugging the victim/witness as the jury was filing out. And that bothers me because it was allowed to happen or it did happen. I am

satisfied beyond a reasonable doubt that it did not change the outcome of this trial. I think ... the problem with the jury was that each of the elements of this offense was clear. It's just that most people don't believe what was proven to be aggravated rape. But the legislature has provided otherwise.

The appellant contends in this Court that the trial court committed error of prejudicial dimensions in denying his motion for mistrial.

■ A motion for the entry of a mistrial is a procedural device which requests the trial court to stop the trial, discharge the jury, and impanel another jury to determine the guilt of the accused. *See Clark v. State,* 170 Tenn. 494, 499, 502, 97 S.W.2d 644, 646 (1936); *Ferguson v. State,* 417 So.2d 639, 641 (Fla.1982). The entry of a mistrial is appropriate when the trial cannot continue, or, if the trial does continues, a miscarriage of justice will occur.

■ Whether an occurrence during the course of a trial warrants the entry of a mistrial is a matter which addresses itself to the sound discretion of the trial court; and this Court will not interfere with the exercise of this discretion absent clear abuse appearing on the face of the record. *State v. Millbrooks,* 819 S.W.2d 441, 443 (Tenn.Crim.App. 1991); *State v. Jones,* 733 S.W.2d 517, 522 (Tenn.Crim.App.1987); *Arnold v. State,* 563 S.W.2d 792, 794 (Tenn.Crim.App.1977).

■ In this case, the trial court did not abuse its discretion in overruling the appellant's motion for a mistrial. The record prevents this Court from reaching any other decision. This Court is not familiar with the Williamson County courtrooms. Depending upon the location of the witness stand, the jury box, and the jury room, it is conceivable that the jurors did not see the occurrence. The jury may have believed that the vic-

---

1. In the case of *State v. Larry B. Harris,* 866 S.W.2d 583 (Tenn.Crim.App.1992) *per. app. denied,* August 2, 1993, this Court, addressing a similar issue, said:

> Our legislature has included bruising and physical pain as adequate elements justifying a conviction for aggravated rape. It is not the duty of this Court to apply size or degree

requirements to such unambiguous legislation. Consequently, given the presence of a bruise, the tenderness of the pelvic area, and the testimony of the victim and the examining physician, there were sufficient grounds for a rational trier of fact to find the defendant guilty of aggravated rape.

866 S.W.2d at 588.

tim/witness coordinator was a relative of the victim. It would be a natural occurrence for a relative to console another relative. There is no indication the jurors knew that the coordinator was employed by the district attorney general.

When the trial court denied the motion for a mistrial, defense counsel should have requested a curative instruction. Of course, Counsel may have deemed it wiser not to bring the matter to the attention of the jurors. That is a perfectly legitimate trial decision. However, the right to a curative instruction was waived when counsel failed to request it. *State v. Mackey,* 638 S.W.2d 830, 835–836 (Tenn.Crim.App.1982). Furthermore, an accused is not entitled to relief when he fails "to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R.App.P. 36(a).

This issue is without merit.

### III.

The appellant had a carpet burn on her knee. The appellant caused the scab to break and the wound began to bleed. As a result, blood from the wound was "printed" on the appellant's shirt. The following colloquy occurred between the victim and the assistant district attorney general on direct examination:

Q. Do you recall anything about any blood that might have been on your knee?

A. Yes, I had a carpet burn on my knee and when he made me hold my knees up with my hands, he would rub up against me with his penis on my vagina and he rubbed the scab off my knee and it started bleeding.

Q. How did he rub the scab off your knee?

A. By rubbing up against me with his penis.

Q. Do you know if he got any blood on him from that?

A. It printed on his shirt.

Q. It did what?

A. It printed—the blood printed.

Q. On his shirt?

A. Yes.

Defense counsel did not object to this testimony.

During the redirect examination of the victim, the assistant district attorney general advised counsel that he was going to introduce the shirt worn by the appellant on the night in question into evidence through the victim. During a jury-out hearing, defense counsel advised the trial court:

[T]he district attorney just advised me that he's going to try to introduce the shirt Mr. McPherson had on the night of this incident. We don't have any problem with the introduction of the shirt, itself, however, the bag that he has it in says that it has a bloodstain on it. . . .

THE COURT: Are you going to try to introduce the bag?

GENERAL DAVIS: Well, I was gong to mark it for identification, it's the shirt I want to introduce.

\* \* \* \* \* \*

THE COURT: Well, I'm going to sustain your objection as to the bag, if that's all you're objecting to.

A sticker was placed over the portion of the bag that contained the word "bloodstain." This satisfied defense counsel. The appellant's shirt was subsequently introduced into evidence through the victim.

The assistant district attorney general asked the victim: "Now, you have testified to some sort of a bloodstain or something about your knee, can you tell us where that is?" Defense counsel objected on the ground the victim was not qualified "to testify as to a forensic analysis whether that's blood or not." After counsel stated their respective positions, the trial court asked counsel to approach the bench. The transcript states: "WHEREUPON, a sidebar conference was had which was not requested to be on the record. . . ."

The assistant district attorney general asked the victim after the sidebar conference if there was a stain on the shirt, and, if so, to point to it. The following colloquy followed:

Q. Do you know how that stain got on there?

A. Because if his shirt is facing this way, I had the carpet burn on my right knee and he had my knees up, up like a woman was in labor, and he was leaning, rubbing, and it printed right there (indicating).

Q. It printed what right there?

A. Blood.

Q. Blood from where?

A. My knee.

Q. From your knee?

A. Yes.

Q. Did you see that get printed on the shirt when it happened?

A. Yes, 'cause when he raised—

Q. And is that the place—

A. —up, it was right here, it was scuffed. There's another place where it looks like he—he just a little spot right there (indicating).

After defense counsel completed its recross-examination of the victim, counsel moved for a mistrial predicated upon this question asked by the assistant district attorney general: "Now, you have testified to some sort of a bloodstain or something about your knee, can you tell us where that is?" The motion was predicated upon the use of the word "bloodstain." The trial court denied the motion.

■ The trial court properly denied defense counsel motion for a mistrial. Defense counsel did not object when the victim testified that the blood from her knee "printed on his shirt." This testimony established that there was a "bloodstain" on the appellant's shirt. Also, defense counsel did not object when the victim testified on redirect examination that her blood "printed on the shirt." Of course, it must be remembered that the victim knew her knee was bleeding, she saw the appellant press against the knee, and she was personally aware that the stain on the shirt was her blood.

This issue is without merit.

**IV.**

■ The state called the appellant's cousin as a witness. The victim lived with the cousin before and after the incident in question. The witness testified that after she was

raped, the victim was afraid to be alone at night and wanted someone with her during the day. She related a few incidents when the victim became emotional. Defense counsel objected to this testimony on the ground of relevancy.

The appellant argues that this evidence was designed to arouse the sympathy of the jury and was unfairly prejudicial given the "close" evidence. The state argues that defense counsel opened the proverbial door by suggesting, during the victim's cross-examination, that the victim had fabricated the allegations, that the victim acted calm and natural after the offense, and the victim laughed when she was being interviewed by a police officer.

The record reflects that defense counsel conducted an exhaustive cross-examination of the victim, her prior statements to police, and her prior omissions in the statements she gave to the police. As the state suggests, defense counsel also elicited conduct by the victim seemingly incongruous with the alleged offense, i.e., being calm and even laughing as she gave a taped statement.

The testimony of the victim's cousin was limited in scope, somewhat vague, but it was based upon the witness's first-hand knowledge—her personal observation of the victim. It was in direct response to defense counsel's vigorous attack upon the victim's conduct following the rape. In short, it was admissible to substantiate the credibility of the victim. *See State v. Robert Wayne Seffens,* Davidson County No. 01–C–01–9107–CR–00190, 1992 WL 75831 (Tenn.Crim.App., Nashville, March 16, 1992), *per. app. denied,* July 6, 1992.

This issue is without merit.

**V.**

The appellant made a statement to the police following his arrest after he was advised of the *Miranda* rights. The officer interviewing the appellant wrote what the appellant said on paper. When the interview was completed, the officer asked the appellant to sign the statement. The officer was asked if he had taken a written statement. The officer responded: "I wrote his version

of what happened and asked him to sign it. And at that time he said: 'I'd better wait 'till I talk to a lawyer.' "

 The appellant contends that the state committed error of prejudicial proportions by permitting the officer's testimony that he would rather not sign the statement until he talked to a lawyer. He admits in his brief that he was given the *Miranda* rights. He also admits that defense counsel did not object to this testimony.

This issue has been waived. Tenn. R.App.P. 36(a); Tenn.R.Evid. 103(a)(1); *State v. Thompson,* 832 S.W.2d 577, 579 (Tenn.Crim.App.1991); *State v. Dobbins,* 754 S.W.2d 637, 641 (Tenn.Crim.App.1988), *per. app. denied,* July 5, 1988; *State v. Rhoden,* 739 S.W.2d 6, 11 (Tenn.Crim.App.1987), *per. app. denied,* October 5, 1987; *State v. Barton,* 626 S.W.2d 296, 298 (Tenn.Crim.App. 1981), *per. app. denied,* December 28, 1981.

### VI.

The trial court received a question from the jury during its deliberations. The question asked: "When the defendant knowingly, intentionally, or recklessly commits a crime, must he know that it constitutes that crime, i.e., if a defendant thinks digital penetration is only sexual assault at the time he has committed the crime, is he still knowingly, intentionally or recklessly committing aggravated rape?" The trial court gave the following response to the jury's question: "If a defendant knowingly, intentionally, or recklessly commits an act which constitutes a crime, whether he knew the act to be a crime is not material to his guilt."

 The trial court discussed this instruction with counsel before giving it to the jury. The following colloquy occurred between the trial court and defense counsel:

MR. YOUNG: Please the Court, the defense would request the court to instruct the jury that they have the charge and have been given the charge, and that they need to refer to the charge and make their decision based on the charge and that no other further instruction can be given. And we object to any further instructions being given because it appears to be an abrogation of the charge, an extension of the charge that is not warranted, nor permissible under the laws of any statute.

THE COURT: Do you have any other complaint with what I read? Do you have any suggestions that what I read is not the law?

MR. YOUNG: I don't have a case right here in front of me, if it please the Court, I think to extend the charge, as I've stated—I've stated my objection as best I know how to state it. No, sir.

THE COURT: Do you have any comment on that?

GENERAL DAVIS: No, Your Honor. I think it's the law, and that sounds fine.

In this Court the appellant contends that the trial court erroneously charged the jury because the trial court (a) failed to adequately define the "mistake" elements of Tenn.Code Ann. § 39-11-502 and (b) the instruction was an unconstitutional comment on the evidence.

 This issue has been waived. A party may not object on one ground, change theories in mid-stream, and assert a new or different reason for the alleged error in this Court. *State v. Matthews,* 805 S.W.2d 776, 781 (Tenn.Crim.App.1990), *per. app. denied,* November 13, 1990; *State v. Aucoin,* 756 S.W.2d 705, 715 (Tenn.Crim.App.1988), *cert. denied,* 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989); *State v. Ryan,* 756 S.W.2d 284, 288 (Tenn.Crim.App.1988), *per. app. denied,* August 29, 1988; *State v. Dobbins,* 754 S.W.2d 637, 641 (Tenn.Crim.App. 1988), *per. app. denied,* July 5, 1988; *State v. Davis,* 751 S.W.2d 167, 171 (Tenn.Crim.App. 1988), *per. app. denied,* May 31, 1988; *State v. Galloway,* 696 S.W.2d 364, 368 (Tenn. Crim.App.1985), *per. app. denied,* August 12, 1985; *State v. Brock,* 678 S.W.2d 486, 489–490 (Tenn.Crim.App.1984), *per. app denied,* October 9, 1984; *State v. Leaphart,* 673 S.W.2d 870, 873 (Tenn.Crim.App.1983), *per. app. denied,* April 2, 1984.

### VII.

The appellant contends that the trial court committed error of prejudicial dimensions in failing to charge the jury on the "mistake of fact" defense. He contends that Tenn.Code

Ann. § 39–11–502 permits an accused to raise the defense of mistake of fact if it "negates the culpable mental state of the accused of the charged defense."

■ The fallacy with this argument is that the appellant did not rely upon the defense of mistake of fact. Neither the opening statement of defense counsel, the defense proof, or the summation of defense counsel mentions that there was a mistake of fact. To the contrary, the appellant testified that he never digitally penetrated the victim's vagina or rectum. He further testified that he could not sustain an erection that evening. In other words, this defense was not fairly raised by the evidence or asserted by the appellant.

■ It is the duty of the trial court, without request, to instruct the jury on the rules of law governing every issue raised by the evidence. See Poe v. State, 212 Tenn. 413, 416, 370 S.W.2d 488, 489 (1963); State v. Locke, 771 S.W.2d 132, 138–139 (Tenn.Crim. App.1988), per. app. denied, May 8, 1989. An accused's right to a full exposition of the law applicable to the facts extends to the accused's theory of defense. Poe v. State, 212 Tenn. at 414–420, 370 S.W.2d at 491; Davis v. State, 64 Tenn. 612, 612 (1875). However, before an accused is entitled to an instruction on a theory of defense, the defense must be "fairly raised" by the evidence adduced at trial. Poe v. State, 212 Tenn. at 416, 370 S.W.2d at 489. See State v. Hardin, 691 S.W.2d 578, 581 (Tenn.Crim.App.1985) (alibi defense not fairly raised by the evidence); State v. Mathias, 687 S.W.2d 296, 298 (Tenn.Crim.App.1985), per. app. denied, March 4, 1985 (entrapment defense not fairly raised by the evidence); State v. Chambless, 682 S.W.2d 227, 231–232 (Tenn.Crim.App. 1984), per. app. denied, December 17, 1984 (temporary insanity defense not fairly raised by the evidence); Harrell v. State, 593 S.W.2d 664, 672 (Tenn.Crim.App.1979), per. app. denied, January 28, 1980 (voluntary intoxication not fairly raised by the evidence).

The appellant was not entitled to an instruction on the defense of mistake of fact given the fact that it was not "fairly raised" by the evidence or asserted by the accused when he was tried for the offense of which he stands convicted.

This issue is without merit.

## VIII.

The appellant contends that the trial court also committed error of prejudicial dimensions because the court "failed to instruct the jury as to the effect of the defendant's intoxication on his intent pursuant to T.C.A. § 39–11–503." He argues that this defense is "fairly raised" by the evidence.

■ The fallacy with this argument is that the appellant did not rely upon this defense. Neither the opening statement of defense counsel, the defense proof, or the summation of defense counsel mentions that he was intoxicated. To the contrary, the appellant was able to vividly recall all of the events of the night in question. He specifically remembered that he did not digitally penetrate the victim. He was able to operate his motor vehicle. He was followed by a Brentwood police officer and the officer never mentioned that the appellant's truck was being operated in an erratic manner. The victim never mentioned that the appellant was driving erratically. Moreover, the police officers that came into contact with the appellant never mentioned that he was intoxicated when he was arrested, interrogated, or booked. His statement certainly establishes that he was rational. In short, the evidence does not support his contention that he was intoxicated.

This issue is without merit.

## IX.

The appellant contends that the trial court's instruction on reasonable doubt was violative of holding in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). He candidly admits that this Court has recently held that the instruction given by the trial court comports with Cage. See State v. Gary Lee Blank, Williamson County No. 01–C–01–9105–CC–00139, 1992 WL 35009 (Tenn.Crim.App., Nashville, February 26, 1992), per. app. dismissed, May 4, 1992. This case was tried by the same trial judge that tried the appellant in this case. Judge

John K. Byers, speaking for a unanimous court, said: "We find the instruction of the court on the subject of reasonable doubt does not violate the constitutional right of the accused on the basis of the United States Supreme Court holding in *Cage v. Louisiana....*"

■ Unfortunately, this issue has been waived. It was not included in the motion for a new trial. Tenn.R.App.P. 3(e). *See State v. Caldwell*, 671 S.W.2d 459, 465 (Tenn.) *cert. denied*, 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984); *State v. Gilmore*, 823 S.W.2d 566, 570 (Tenn.Crim.App.1991), *per. app. denied*, December 2, 1991; *State v. Carter*, 687 S.W.2d 292, 293 (Tenn.Crim.App. 1984), *per. app. denied*, March 4, 1985.

## X.

The trial court charged the jury on the order that the principal offense and the lesser included offenses were to be considered. The charge of the trial court states in part:

Verdict and order of consideration. When you retire to consider your verdict, you will first consider the defendant's guilt or innocence of the offense of aggravated rape....

If you find the defendant not guilty of aggravated rape, or if you have a reasonable doubt as to his guilt, you will acquit him of this offense and proceed to consider his guilt or innocence of the offense of rape, which is a lesser-included offense.

\* \* \* \* \* \*

If you find the defendant not guilty of the offense rape, or if you have a reasonable doubt as to his guilt, you will acquit him of this offense and proceed to consider the defendant's guilt or innocence of aggravated sexual battery, which is a lesser-included offense.

\* \* \* \* \* \*

If you find the defendant not guilty of this offense, or if you have a reasonable doubt as to his guilt, you will acquit him of this offense and proceed to consider the defen-

dant's guilt or innocence of assault, which is a lesser-included offense.

\* \* \* \* \* \*

If you find the defendant not guilty of this offense, or if you have a reasonable doubt as to his guilt, you will acquit him of this offense and not guilty will be your verdict.

The jury asked the following question after it began its deliberations: "Do you have to unanimously agree to acquit in order to proceed to the next possible crime category?" The trial court answered the question: "Yes." Defense counsel waived the presence of the accused. No objection was interposed to the response given by the trial court.

The appellant contends that the trial court committed error of prejudicial dimensions in giving the supplemental instruction in response to the jury's question. The appellant does not complaint of the provisions of the trial court's charge hereinabove set forth.

The appellant admits that the rule followed in Tennessee is the majority rule in this Country. However, he urges this Court to "abandon the rigid 'acquittal-first' requirement" and adopt a rule that permits the jury to either (a) vote to acquit the accused of the greater offense or (b) proceed to consider a lesser included offense if the jurors cannot agree that the appellant is guilty of the principal or greater offense.

■ Unfortunately, this issue was waived when defense counsel did not object to the supplemental instruction given by the trial court. Tenn.R.App.P. 36(a). Moreover, the appellant would not be entitled to relief on this ground given the instructions contained in the charge of the trial court when (a) the instructions were not raised in the motion for a new trial, Tenn.R.App.P. 3(e), or (b) briefed in this Court. Tenn.R.App.P. 27(a)(7).

It is parenthetically noted that the issue raised by the appellant has been previously resolved by this Court. *See State v. Rutherford*, 876 S.W.2d 118 (Tenn.Crim.App.1993).[2] In *Rutherford*, a panel of this Court ap-

**2.** The accused's application for permission to appeal is presently pending in the Supreme Court.

**376** 

proved instructions almost identical to the instructions contained in the charge of the trial court.

This issue is without merit.

## XI.

 The appellant contends that the trial court committed error of prejudicial dimensions when the court found that the appellant committed the offense to gratify his "desire for pleasure or excitement." Tenn.Code Ann. § 40–35–114(7). He relies upon the decisions of this Court which have held that this enhancement factor is inherent in the offense of aggravated rape, and, therefore, should not be considered. Assuming that this factor is not applicable, the appellant contends that he should have been sentenced as an especially mitigated offender rather than a standard offender.

In the recent case of *State v. Adams*, 864 S.W.2d 31 (Tenn.1993), the Supreme Court addressed the question of whether a trial court could consider the enhancement factor in question in an aggravated rape case. The Court held that "[t]he desire for pleasure or excitement should not be inherently presumed from the act of the rape." 864 S.W.2d at 35. Thus, *Adams* overruled by implication the cases cited by the appellant in support of this issue.

 The evidence adduced during the trial makes it abundantly clear that the appellant committed the crime in question to satisfy his desire for pleasure and excitement. He partially disrobed the victim, made her pose, and took photographs of her. He digitally penetrated the victim's vagina and rectum; and, when he was aroused, he rubbed his reproductive organ against the victim until he ejaculated. He did this on more than one occasion. When his sexual appetite was satisfied, he was willing to take the victim home.

 An accused may be sentenced as an especially mitigated offender when (a) the accused has no prior felony convictions and (b) the trial court finds mitigating, but no enhancement, factors. Tenn.Code Ann. § 40–35–109(a). The trial court properly found that the appellant committed the of-

fense to satisfy his desire for pleasure and excitement. Consequently, the appellant was not eligible for sentencing as an especially mitigated offender.

This issue is without merit.

DWYER, J., and LAFFERTY, Special Judge, concur.