IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2005

## DARRELL ANDERSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-04-203     Roy B. Morgan, Judge**

_____

**No. W2004-01758-CCA-R3-PC  - Filed April 27, 2005**

_____

On May 14, 2004, the petitioner filed a petition for post-conviction relief to challenge his 2002 Madison County Circuit Court conviction of assault and aggravated assault. *See State v. Darrell M. Anderson*, No. W2002-01269-CCA-R3-CD (Tenn. Crim. App., Jackson, May 15, 2003). The post-conviction court appointed counsel, and after conducting an evidentiary hearing, it rejected the petitioner's claims of ineffective assistance of trial counsel and of trial error and denied relief. The petitioner appealed in a timely manner, but following our review upon the record, we affirm the order denying post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Richard L. Finney, Jackson, Tennessee, for the Appellant, Darrell Anderson.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; James G. Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This court's opinion in *Darrell M. Anderson* summarizes the facts underlying the petitioner's convictions:

> On April 5, 2001, Yulanda Hollis resided with the defendant, who was her fiancé. After informing the defendant that she planned to see a movie at Hollywood Cinema with her cousin, Shamika Anderson, she left the residence. When Ms. Anderson could not join her, Ms. Hollis went to the movie with the victim, Troy Holloway, who was a co-worker. According to the victim, while the two were waiting for

the movie to begin, the defendant entered the theater, at which point Ms. Hollis remarked, "That's my boyfriend." The defendant then left but returned approximately ten minutes later. The defendant, who was carrying a tire iron, ran towards the victim. The defendant swung the tire iron at the victim but missed and the two men began to scuffle. Ms. Hollis intervened, separated the two men, and the three left. As Ms. Hollis was driving the victim to his residence, the victim noticed that the defendant was following in his car. Fearful that the defendant intended to ram his vehicle into hers, Ms. Hollis pulled into the parking lot of a shopping center, stepped out of her car, and walked towards the defendant. The defendant, armed with a "pipe," walked past Ms. Hollis towards the victim and threw the pipe, barely missing the victim's head. The defendant then returned to his car and drove away.

. . . .

By the time police arrived, the defendant was no longer at the scene. Officer Gary Jones, who investigated, drove to the Hollywood Cinema and found a tire iron located under a seat.

By the time of trial, Ms. Hollis had married the defendant. Called as a defense witness, she testified that as the defendant approached the victim inside the movie theater, "[The victim] jumped up and both of them got into each other." She stated that she ran to the concession stand for assistance and that by the time she returned, "There was no altercation . . . [and the two men] were coming down the stairs." Ms. Hollis denied that the defendant had entered the theater more than once. She claimed that she did not see a weapon in the defendant's possession. With regard to the second encounter, Ms. Hollis confirmed that the defendant had followed her into the shopping center parking lot but contended that he had approached her vehicle only to take possession of some personal belongings he had left in her car. Ms. Hollis acknowledged that the two men exchanged words and stated that "they were like just chasing each other around the car . . . [with] no blows or anything." She recalled that Constable Perry intervened and the defendant left. Upon cross-examination, Ms. Hollis acknowledged that she met the victim at the post office and ate with him at a restaurant before going to the movie theater. She also acknowledged that the defendant took a "black and long" stick from beneath her seat during the second altercation. She conceded that the defendant threw the stick but had missed the victim.

*Darrell M. Anderson*, slip op. at 1-2.

In the post-conviction evidentiary hearing, the petitioner testified that he spoke with his retained trial attorney only once; the conference was held about a month prior to trial and lasted for a period of 30 minutes. He testified that, following trial, counsel did not confer with him again until the sentencing hearing. He testified that counsel discussed with him neither a theory of defense nor the evidence that would or could be presented at trial. Specifically, he claimed that his trial counsel failed to present evidence of self-defense at trial.

The petitioner testified that trial counsel should have objected to the victim's testimony that, when the victim was riding in a car with Ms. Hollis, she said, "He's gonna hit me. He's gonna hit me."

On cross-examination, the petitioner denied making a pretrial statement that he became enraged when he discovered the victim in a movie theater with Ms. Hollis and that he entered the theater with a tire iron to confront the victim. The petitioner admitted that he went into the theater with a "tire tool . . . in [his] pants," but he testified that, rather than arming himself before entering the theater, he was merely carrying the accouterments of his trade as a "professional auto detailer."

The petitioner's trial counsel testified in the evidentiary hearing that she conferred with the petitioner numerous times prior to his trial. Counsel testified that, prior to trial, she was aware of the petitioner's claim that, inside the theater, the male victim accosted the petitioner and that the petitioner did not remove the tire tool from his pocket; however, the petitioner agreed that he should not testify at trial because of his prior criminal record and because of the possibility of impeachment via a prior inconsistent statement. She testified that the trial court conducted a *voir dire* of the petitioner and determined that he had made a voluntary, competent decision not to testify. On cross-examination, she admitted that she requested no jury instruction on self-defense.

Following the hearing, the post-conviction court ruled that the petitioner had failed to establish his claims for relief by clear and convincing evidence and dismissed the petition. On appeal, the petitioner claims that trial counsel was ineffective in failing to object to the introduction of hearsay evidence and in failing to request a jury instruction on self-defense.
.

In post-conviction proceedings, the petitioner has the burden of proving by clear and convincing evidence the claims raised. Tenn. Code Ann. § 40-30-110(f) (2003). On appeal, the lower court's findings of fact are reviewed *de novo* with a presumption of correctness that may only be overcome if the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). On appeal, the lower court's findings of fact are reviewed *de novo* with a presumption of correctness that may only be overcome if the evidence preponderates against those findings. *Id.*

When a petitioner challenges the effective assistance of counsel, he has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel's services fall below the range of competence demanded of attorneys in criminal cases. *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). Courts need not address both *Strickland* components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). On review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995).

In evaluating counsel's performance, this court should not examine every allegedly deficient act or omission in isolation, but rather we view the performance in the context of the case as a whole. *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The primary concern of the court should be the fundamental fairness of the proceeding being challenged. *Id.* Therefore, this court should not second-guess tactical and strategic decisions of defense counsel. *Henley*, 960 S.W.2d at 579. Instead, this court must reconstruct the circumstances of counsel's challenged conduct and evaluate the conduct from counsel's perspective at the time. *Id.*; *see also Irick v. State*, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998). A court must

> "consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated trivial effect. . . ."

*Henley*, 960 S.W.2d at 580 (quoting *Strickland*, 466 U.S. at 696-97, 104 S. Ct. at 2069).

In the present case, the post-conviction court held that the petitioner failed to establish his claims of ineffective assistance of counsel by clear and convincing evidence, and on appeal, we hold that the petitioner has failed to show that the trial court erred in so holding. The record, via trial counsel's testimony, supports a finding that counsel was fully informed of the petitioner's claim of self-defense, but counsel testified that after advising the petitioner that his testifying would evoke impeachment via evidence of his prior criminal record[1] and of his prior statement,[2] the petitioner made a strategic decision to not testify. The trial court apparently found that the decision was

---

[1] Counsel had sought a Tennessee Rule of Evidence 609 determination of the admissibility of prior convictions for impeachment purposes, and the trial court had ruled that certain convictions would be admissible should the petitioner testify at trial.

[2] Counsel testified that the petitioner's proposed trial testimony would have contradicted his pretrial statement on the issue of whether the petitioner purposefully carried the tire tool into the theater.

voluntary and competent. The strategic decision to keep the petitioner off the witness stand was made upon due discovery and preparation, and accordingly, it will not be second-guessed by this court, despite that the decision obviously hampered the petitioner in advancing his claim of self-defense.

Thus, in consequence of this strategic decision to which we defer, we question whether the evidence at trial fairly raised the self-defense issue.[3] *See Poe v. State*, 212 Tenn. 413, 416, 370 S.W.2d 488, 489 (1963) (holding that a trial court is obligated, without request, to instruct the jury on the rules of law governing every issue fairly raised by the evidence); *State v. McPherson*, 882 S.W.2d 365, 374 (Tenn. Crim. App. 1994). In any event, the petitioner failed to demonstrate in the post-conviction hearing how the absence of self-defense jury instructions prejudiced him in the outcome of the trial. The evidence at trial, apparently accredited by the jury, showed that the petitioner used a deadly weapon to assault an apparently unarmed victim.

We are also at a loss to determine whether the complained-of hearsay statement as set forth in the post-conviction hearing was actually hearsay or, if so, whether an exception to the hearsay rule applied. *See* Tenn. R. Evid. 801(c) (defining a hearsay statement as an extrajudicial statement "offered in evidence to prove the truth of the matter asserted"); *see generally id.* 803 (listing various exceptions to the hearsay rule). Consequently, we see no basis for holding that trial counsel's performance in not objecting to the extrajudicial statement was deficient, and at any rate, the petitioner failed to demonstrate prejudice from the admission of the statement.

In the final analysis, we agree with the post-conviction court and affirm the denial of relief.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[3] We note that the post-conviction record does not contain a full transcript of the trial. From the excerpts of the trial testimony inserted into the evidentiary hearing by the petitioner and from the summary of the facts presented in *Darrell M. Anderson*, we find it difficult to discern a fair raising of the self-defense issue.