# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## OCTOBER 1997 SESSION

FILED

November 6, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 01C01-9610-CR-00443 |
| | ) | |
| Appellee, | ) | DAVIDSON COUNTY |
| | ) | |
| VS. | ) | HON. THOMAS H. SHRIVER, |
| | ) | JUDGE |
| WILLIAM K. HOWELL, | ) | |
| | ) | (Felony Murder) |
| Appellant. | ) | |

**FOR THE APPELLANT:**

**KARL DEAN**
Public Defender

**JEFFREY A. DEVASHER (On Appeal)**
Senior Assistant Public Defender

**ROSS ALDERMAN (At Trial)**
**LAURA DYKES (At Trial)**
Assistant Public Defenders
1202 Stahlman Building
Nashville, TN 37201

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**LISA A. NAYLOR**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**VICTOR S. JOHNSON, III**
District Attorney General

**JOHN ZIMMERMANN**
Assistant District Attorney General
Washington Square, Ste. 500
222 Second Avenue, N.
Nashville, TN 37201-1649

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**O P I N I O N**

Defendant, William K. Howell, was convicted by a Davidson County jury of first degree murder in perpetration of theft and sentenced to life imprisonment. In this direct appeal, he presents the following issues for our review:

>     (1)     whether the evidence was sufficient to support the conviction;
>
>     (2)     whether the trial court erred in its denial of the defendant's motion for mistrial during the prosecuting attorney's opening statement;
>
>     (3)     whether the trial court erred in admitting numerous autopsy photographs; and
>
>     (4)     whether the trial court's jury charge on parole eligibility was unconstitutional.

Finding no reversible error, we affirm the judgment of the trial court.

## FACTS

The victim, Jerry Johns, was brutally beaten and stabbed to death in his residence on December 7, 1994. Identity was not an issue at trial as defendant admitted to fatally striking the victim; however, defendant contended he did so in self-defense after the victim made an unwanted homosexual advance and displayed a knife.

The victim's son testified his father had been married three (3) times and had four (4) children. To his knowledge, his father had no homosexual tendencies. Two (2) days prior to the homicide, he had given his father $200 for a debt.

Officer Kendall Jaegger responded to the 911 call from the victim's residence at approximately 4:30 a.m. The victim was found lying on the floor, and there had obviously been an intense struggle. The room was in disarray, and some drawers in the bedroom had been pulled out with various items strewn about the bedroom.

Detective Larry Flair discovered a broken ashtray on the floor. Latent fingerprints were taken from the crime scene. These prints were subsequently identified as the fingerprints of defendant.

2

Upon receiving the fingerprint identification several days after the homicide, Detective Flair questioned the defendant about the homicide. The defendant at first denied knowing anything about the incident. Upon being told about the fingerprint identification, the defendant admitted his involvement.

In a taped statement the defendant stated he did not know the victim until the night he was picked up by the victim while hitchhiking. They drank beer and used drugs at the victim's residence. The victim, according to defendant's statement, asked the defendant if he had ever had sex with a man. On the second occasion when the victim brought up this subject, they began to argue and the victim pulled a knife from his pocket. The defendant stated he hit the victim with an ashtray but did not recall how many times. Defendant further conceded that he must have also used the victim's knife as a weapon. The defendant admitted removing the wallet from the victim's back pocket. He stated that the wallet, along with the victim's knife, were later thrown into the Cumberland River.

The autopsy report indicated the cause of death to be from multiple stab and incised wounds to the head, neck, trunk and upper extremeties. Although the wounds were too numerous to count and detail, there were thirty (30) or more to the head, fifteen (15) or more to the chest and back, and about forty (40) defensive incised wounds to the hands and forearms. The wounds were inflicted by at least two (2) different weapons, one a blount object and one a sharp object. The various wounds were consistent with being caused by either the broken ashtray or the knife.

An employee at a tavern testified that on the night before the homicide the victim paid for a beer with a $100 bill. The victim stated that was the smallest bill that he had. The bartender further noticed that he had other folded money in his wallet.

The owner of this tavern testified that she had known the victim for several years and did not believe him to be homosexual.

The 911 operator testified that she received a call at 4:32 a.m. on December 7, 1994. The recorded call indicated a voice saying, "please, no," and "God, no." She heard fifteen impact sounds.

3

The defendant testified at trial relating facts similar to his pre-trial statement. He admitted to using drugs with the victim at the residence. He testified the victim made homosexual remarks, and he saw the victim with a knife in his right hand. The defendant recalled hitting the victim in the head with the ashtray but did not remember inflicting multiple wounds upon the victim. He stated that he picked up the victim's wallet by mistake thinking it was his own wallet.

In rebuttal the victim's girlfriend testified that on the night before the victim was brutally murdered, the victim had asked her to marry him. She also stated that he had no homosexual tendencies.

The jury convicted the defendant of first degree murder in perpetration of theft.

## SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to support the conviction of first degree murder in perpetration of theft. In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 61 L. Ed.2d 560 (1979); State v. Cazes, 875

4

S.W.2d 253, 259 (Tenn. 1994).

Defendant was convicted of murder in perpetration of theft. *See* Tenn. Code Ann. § 39-13-202(a)(2). A person commits theft if he "with intent to deprive the owner of property, . . . knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

The defendant's pre-trial statement indicated that he took the wallet out of the victim's back pocket. The defendant went through the victim's drawers in the bedroom. It was for the jury to determine whether or not this brutal attack, resulting in over eighty-five (85) wounds, was committed in perpetration of theft. Defendant has not overcome his presumption of guilt on appeal. *See* State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). This issue is without merit.

## MOTION FOR MISTRIAL

In a pre-trial motion the defendant requested a bill of particulars for specific acts by the defendant alleged to constitute "the perpetration or attempt to perpetrate theft." Defendant specifically requested a description of the property alleged to be the subject of the theft or attempted theft. Defense counsel stated he was aware of the wallet and knife. The state further noted that the defendant had "rummaged through the house."

During opening statement the prosecuting attorney noted that the victim's wallet must have contained "at least a few hundred dollars." Defense counsel thereafter moved for a mistrial alleging the state never disclosed that money was taken. The motion was overruled.

Whether an occurrence during the course of a trial warrants the entry of a mistrial is a matter which addresses itself to the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion absent clear abuse. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994).

The purpose of a bill of particulars is to enable a defendant to adequately identify the offense charged. Tenn. R. Crim. P. 7(c); State v. Hicks, 666 S.W.2d 54, 56 (Tenn. 1984). A bill of particulars is not a discovery device. Tenn. R. Crim. P. 7(c), Advisory Commission Comments.

Defendant and his counsel were aware that the theft involved the victim's wallet. The fact that the state did not specifically reveal that the wallet apparently had a significant sum of money in it is not required by a bill of particulars. Furthermore, there is no showing that the state deliberately withheld this information. The trial court did not abuse its discretion in denying the motion for mistrial.

## PHOTOGRAPHS

Next, defendant argues that the trial judge erred in allowing the state to introduce numerous photographs of the victim taken during the autopsy. The photographs are indeed graphic and depict numerous and extensive wounds inflicted upon the victim.

The admissibility of photographs lies within the sound discretion of the trial court and will not be overturned on appeal absent a clear showing of an abuse of discretion. State v. Cazes, 875 S.W.2d 253, 262-63 (Tenn. 1994); State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978).

In a jury-out hearing the pathologist explained that there were too many wounds to put on a diagram. He stated the photos would be helpful in describing the number of injuries and types of weapons. The trial court found that the pathologist's diagram would not be beneficial to the jury and agreed that certain photographs should be admitted. Some were excluded by the trial court.

Many of the photographs are relevant to the issue of self-defense. At the time the photographs were admitted, the defendant was charged with both premeditated

6

first degree murder as well as first degree murder in perpetration of theft.[1]   The

number and nature of the defensive wounds on the hands and arms of the victim are

certainly relevant to the issue of self-defense.  Another photo depicted a very deep

wound that, in the opinion of the pathologist, was inflicted near or after death.  This

also refutes the self-defense claim.

Defendant's contention that the numerous exhibits are cumulative with the

danger of unfair prejudice outweighing probative value presents a much closer issue.

*See* Tenn. R. Evid. 403.  A careful examination of the evidence, however, reveals no

reversible error in light of the overwhelming evidence that the defendant unlawfully

committed this homicide.  If indeed there was error in the admission of some of the

photographs, that error was harmless beyond a reasonable doubt.  Tenn. R. App. P.

36(b).


**PAROLE ELIGIBILITY JURY INSTRUCTION**


Defendant requested that the jury be charged as to range of punishment

pursuant to Tenn. Code  Ann. § 40-35-201(b)(1).  The trial court also charged the

jury, as required by Tenn. Code  Ann. § 40-35-201(b)(2),  as to the approximate

calculation of the minimum time a person must serve before reaching the earliest

release eligibility date.  Defendant contends the latter portion of the jury charge is

unconstitutionally vague, violates due process, deprives the defendant of a fair and

impartial jury, and violates the separation of powers doctrine.  In State v. Howard E.

King, C.C.A. No. 02C01-9601-CR-00032, Shelby County (Tenn. Crim. App. filed Oct.

22, 1996, at Jackson), perm. to app. granted (March 10, 1997), this Court upheld the

constitutionality of Tenn. Code Ann. § 40-35-201(b).  Subsequent cases have

followed King in upholding the constitutionality of the statute.  *See* State v. James

---

[1] In fact, both first degree murder in perpetration of theft and premeditated first degree murder were submitted to the jury.  The jury announced that it found the defendant guilty of both first degree murder in perpetration of theft as charged in Count 1 and premeditated first degree murder as charged in Count 2.  Upon being further instructed by the trial court that defendant could only be convicted of one of the counts and to consider Count 1 first, the jury deliberated further and announced a guilty finding of first degree murder in perpetration of theft.

Edward Gates, C.C.A. No. 01C01-9607-CR-00312, Davidson County (Tenn. Crim. App. filed Sept. 30, 1997, at Nashville); State v. Dwjuan L. Bradford, C.C.A. No. 01C01-9607-CR-00294, Davidson County (Tenn. Crim. App. filed Sept. 30, 1997, at Nashville); State v. Curtis Lee Majors, C.C.A. No. 01C01-9602-CR-00076, Davidson County (Tenn. Crim. App. filed July 30, 1997, at Nashville). This issue is without merit.

The judgment of the trial court is AFFIRMED.

_____
                                          **JOE G. RILEY, JUDGE**

**CONCUR**

_____
**JOE B. JONES, PRESIDING JUDGE**

_____
**WILLIAM M. BARKER, JUDGE**