# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 8, 2012 Session

## STATE OF TENNESSEE v. TERRY SANDERS

**Direct Appeal from the Circuit Court for Houston County**
**No. CR-5130      George C. Sexton, Judge**

---

**No. M2011-00426-CCA-R3-CD - Filed November 15, 2012**

---

The defendant, Terry Sanders, was convicted after a jury trial of two counts of the sale of less than 0.5 grams of cocaine, a Class C felony, in violation of Tennessee Code Annotated section 39-17-417. He was sentenced, as a Range III persistent offender, to fifteen years for each count, to be run consecutively, for an effective sentence of thirty years. The defendant appeals his convictions, asserting that the trial court should have granted his motions for a mistrial based on testimony introduced at trial that the defendant was on community corrections and based on juror bias. After a careful review of the record, we conclude that the defendant is not entitled to a new trial and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., AND JEFFERY S. BIVINGS, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Terry Sanders.

Robert E. Cooper, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Craig Monsue, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was the subject of a drug investigation in which police sent a confidential informant to buy crack cocaine from the defendant at his home. The defendant was on house arrest at the time as part of his participation in a community corrections program. The confidential informant was wired for sound and video at a location close to the defendant's residence and then drove to the defendant's residence to buy the drugs. The confidential informant was furnished with $60 on one occasion and $40 on another occasion

to use in the purchase of the drugs, and he received $100 on each occasion as payment for his participation. The confidential informant received payment only if he was successful in purchasing drugs from the defendant. On the occasion of the first drug purchase, a police officer followed the informant to a location close to the defendant's house, but did not follow him down the defendant's street because it was a dead end and the officer did not want to raise suspicions regarding the informant. The informant testified that, on the way, he made a telephone call to the defendant to let him know he was coming to purchase drugs. The informant and his vehicle were searched before and after both purchases. At trial, the police officer who had conducted the search acknowledged that an object the size of the rocks of cocaine which the confidential informant turned over to police would not necessarily be found in the type of search conducted on the informant.

Although the informant was wired for video and sound, the video equipment malfunctioned during the second purchase. The remaining video did not capture any image of the defendant during the purchase, and neither audio recording captured the defendant saying anything. The confidential informant testified that, on the occasion of the first purchase, he arrived and told the defendant he had the money. "At that point in time he told me – put his finger up to his mouth telling me that I needed to be quiet and pointed down towards his ankle." At the commencement of the trial, the trial court noted outside the jury's presence that this testimony had previously been ruled admissible,[1] but the court would not allow the informant to mention that the defendant was on community corrections at the time. The defense objected to the admission of the testimony that the defendant pointed to his ankle but did not challenge it in the motion for a new trial. The informant testified he did not say anything further after the defendant pointed to his ankle and did not speak during the subsequent buy because the defendant had shushed him on the first occasion. The informant acknowledged that in the second audio recording, his knocking on the defendant's door was also not audible. The informant was cross-examined regarding the fact that in the recording, the informant did not mention to police that the defendant had pointed to his ankle, but instead stated that the defendant had indicated he should be quiet and speculated that the defendant had company.

During the vigorous cross-examination, the confidential informant referred to the defendant's participation in the community corrections program:

> Q. Okay. Now if you didn't call Terry Sanders until you were on your way and there was no discussion of the amount of drugs to be bought or the amount of money you were going to take,

---

[1] Apparently, the defendant had previously been tried in connection with these charges, and a mistrial was declared.

how much money did you know to take or to ask the agents for?

A. That was just a decision that was made – once I met up with [the police officer], he made a decision as to how much to carry and that's what we carried.

Q. So [the defendant] would have no idea of knowing how much money you're coming with or how much crack cocaine he needed to have ready for you.

A. Correct.

Q. You just showed up and that's the way it went down.

A. Yes, sir.

Q. That's the way a professional drug buyer does it, he just shows up, doesn't set up anything ahead of time.

A. Because you don't call and set things like that up ahead of time.

Q. You don't?

A. You might call them and let them know that you're on your way and that's it.

Q. With no phone call ahead of time to even know that he was home.

A. [The defendant] had to be home.

Q. He had to be home?

A. He was on community corrections.

The defendant moved for a mistrial, and the court denied the motion, finding that "[y]ou didn't sling the door wide open but you sort of cracked it." After a recess, the court gave a curative instruction, admonishing the jury that although the witness had mentioned community corrections, the jury was "to disregard that and . . . not consider that at all for any

reason in . . . deliberations." The jury found the defendant guilty on both counts.

During voir dire, the jurors were asked if they knew, had been represented by, or had friends or family represented by the defendant's attorney. No juror answered in the affirmative. After the verdict, defense counsel submitted an affidavit that one of the jurors was in fact a current client of his who had failed to disclose the fact that she knew him. Defense counsel asserted he did not recognize the juror.[2] Furthermore, defense counsel asserted that this same juror was the sister of the district director of the community corrections program. The juror was not called to testify at any subsequent hearing.

The defendant filed a renewed motion for mistrial on January 25, 2010, based on the testimony regarding community corrections and the juror issues. The trial court denied the renewed motion for a mistrial. The defendant also filed a motion for a new trial on March 4, 2010, asserting, among other issues, that the trial court erred in denying the motion for a mistrial based on the testimony regarding community corrections and that the trial court erred in denying the renewed motion for a mistrial based on the juror's familial relationship to the director of community corrections. At the hearing on the motion for a new trial, the defendant moved the court to orally amend the motion to additionally assert that the defendant was also entitled to a new trial because of the juror's failure to reveal her relationship with defense counsel. Although defense counsel stated his intention to make a written amendment, the record is devoid of any amendment in writing. The court denied the motion for a new trial. The defendant appeals the trial court's decision, contending that the court should have granted him a mistrial based on (1) the testimony regarding community corrections; (2) the juror's relationship to the district director of the community corrections program; and (3) the juror's failure to reveal that defense counsel represented her in a civil matter.

## Analysis

### A. Testimony Regarding Community Corrections

The defendant asserts that the trial court erred in not granting a mistrial after the confidential informant testified that the defendant was participating in community corrections at the time of the purchase. A mistrial is a procedural device through which the court stops the trial, discharges the jury, and holds a new trial with a new jury to determine the defendant's guilt. *See State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994).

---

[2]At the defendant's sentencing hearing, defense counsel explained that he had spoken to the juror by phone and written a letter on her behalf but had never met her. He became aware that he represented her when, after trial, the juror asked the clerk to summon him to discuss her case.

A mistrial is declared in order to "to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Welcome*, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007). Only manifest necessity justifies the declaration of a mistrial, and the defendant bears the burden of showing manifest necessity. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). A mistrial is appropriate where a trial cannot continue, or the trial's continuation would be a miscarriage of justice. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). The decision to grant a mistrial rests in the sound discretion of the trial court, and the trial court's decision will not be overturned on appeal absent an abuse of discretion. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002). In determining whether the trial court has abused its discretion, an appellate court considers: (1) whether the State elicited the testimony; (2) whether the trial court gave a curative instruction; and (3) the relative strength or weakness of the State's proof. *Welcome*, 280 S.W.3d at 222.

In the present case, the damaging testimony was neither elicited by the State nor volunteered by the witness. Instead, it was given in response to defense counsel's probing into the witness's statement that the defendant "had to be home." The trial court gave prompt and appropriate curative instructions. Both these factors weigh in favor of not granting a mistrial. Much of the strength of the prosecution's case turned on the testimony of the confidential informant. The defense vigorously cross-examined the informant regarding the financial incentive he had for returning with drugs; discrepancies in his memory of the events; the fact that the defendant is never visible on the video or audible on the audio recordings; and the fact that the informant did not mention the defendant's pointing to his ankle to the police immediately following the purchase. While the evidence of the defendant's guilt was not overwhelming, we conclude that, considering all three factors in conjunction, the trial court did not abuse its discretion in denying the motion for a mistrial. Moreover, the defendant does not appeal the informant's prior testimony that the defendant shushed the informant while pointing to his ankle, and the testimony regarding the defendant's participation in the community corrections program therefore "provided little new information to the jury." *Reid*, 91 S.W.3d at 279 (holding that the defendant was not entitled to a mistrial when evidence regarding the defendant's prior crimes was already before the jury and the trial court gave curative instructions). Accordingly, we affirm the trial court's denial of a mistrial on this basis.

**B. Juror's Familial Relationship to the District Director of Community Corrections**

The defendant next asserts that the trial court improperly denied his motion for a mistrial based on the fact that one juror was the sister of the district director of the community corrections program. This issue was first raised in the defendant's renewed motion for a mistrial, filed after the verdict was returned. "A mistrial is granted in a case in

which the jury is discharged without a verdict; a motion for new trial is made after a judgment has been rendered." *Howell v. Davis*, 299 S.E.2d 336, 337 (S.C. 1983); *see McPherson*, 882 S.W.2d at 370 ("A motion for the entry of a mistrial is a procedural device which requests the trial court to *stop the trial*, discharge the jury, and impanel another jury to determine the guilt of the accused." (emphasis added). The trial court's denial of the motion was raised in the defendant's motion for a new trial. We will review the juror bias issues as the basis for a motion for a new trial.

The right to an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. Challenges to juror qualifications generally fall into one of two categories: *propter affectum* challenges based on bias, prejudice or partiality, which may be brought after the return of the verdict, and *propter defectum* challenges based on a disqualification due to circumstances such as alienage, family relationship, or statutory mandate, which must be brought prior to the verdict. *Carruthers v. State*, 145 S.W.3d 85, 94 (Tenn. Crim. App. 2003). Insofar as the defendant brings a *propter defectum* challenge based on the juror's familial relationship with the district director of community corrections, the challenge should have been brought prior to the return of the verdict. However, insofar as the defendant alleges that the juror was actually biased due to her sister's position, he may be entitled to relief.

The defendant bears the burden to establish a prima facie case of juror bias. *Robinson*, 146 S.W.3d at 523 (appendix). A *propter affectum* challenge is sustained where the defendant either demonstrates actual bias or bias is presumed. *State v. Hugueley*, 185 S.W.3d 356, 378 (Tenn. 2006). Bias is presumed where in cases where "a juror willfully conceals (or fails to disclose) information on voir dire which reflects on the juror's lack of impartiality." *Smith v. State*, 357 S.W.3d 322, 348 (Tenn. 2011). Here, the juror was never asked a question that would have obligated her to reveal her relationship to the community corrections director. As neither the defendant nor the State chose to ask about a possible family relationship with community corrections personnel, the juror was not required to volunteer the information. "Juror bias must be shown, not just suspected." *Hugueley*, 185 S.W.3d at 380 (Tenn. 2006) (quoting *State v. Lawson*, 794 S.W.2d 363, 367 (Tenn. Crim. App. 1990)). No presumption of bias arises, and at the hearing on the motion for a new trial, the defendant introduced no proof showing actual bias on the part of the juror. Accordingly, the defendant is not entitled to a new trial based on the juror's familial relationship to community corrections personnel.

### C. Juror's Relationship with Defense Counsel

Although the juror was not asked any questions that would have obligated her to reveal her relationship with the district director of community corrections, the same was not

true regarding her relationship with defense counsel. During voir dire, the State asked if any potential jurors knew defense counsel, and the juror did not respond. "[W]hen a juror's response to relevant, direct voir dire questioning . . . does not fully and fairly inform counsel of the matters which reflect on a potential juror's possible bias, a presumption of bias arises." *State v. Akins*, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993). Silence in the face of a material question reasonably calculated to elicit the responses is equivalent to a negative answer. *Smith*, 357 S.W.3d at 348.

However, the State correctly notes that this issue was not raised in the defendant's motion for a new trial. At the hearing on the motion for a new trial, defense counsel informed the court that he wished to orally amend his motion to add juror bias based on defense counsel's representation of the juror. While defense counsel stated his intention to reduce this amendment to writing, there is no indication in the record that he ever did.

Tennessee Rule of Appellate Procedure 3 provides:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e). The Advisory Commission Comment to subsection (e) further clarifies that "matters that can only be made a part of the record by a new trial motion must be so included in order to gain appellate review. Jury misconduct provides one example." Tenn. R. App. P. 3(e) Advisory Comm'n cmt. Tennessee Rule of Criminal Procedure 33 allows a motion for a new trial to be raised orally, but requires that it be "be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). The trial court must "liberally grant" motions to amend "until the day of the hearing on the motion for a new trial." *Id.* While the structure of the rule makes it unclear if the requirement that the motion be in writing applies with equal force to amendments, this Court has previously held that an issue raised orally in a motion for a new trial and not subsequently reduced to writing is waived. *State v. Stewart*, No. M2008-00337-CCA-R3-CD, 2010 WL 2025407, at *4 (Tenn. Crim. App. May 21, 2010); *State v. Noles*, No. M2006-01534-CCA-R3-CD, 2007 WL 3274422, at *11 (Tenn. Crim. App. Nov. 6, 2007); *State v. Watson*, No. W2001-03084-CCA-R3-CD, 2002 WL 31258011, at *2 (Tenn. Crim. App. Sept. 16, 2002); *State v. Lanier*, No. W2001-00379-CCA-R3-CD, 2002 WL 1482712,

at *4 (Tenn. Crim. App. Feb. 1, 2002) (concluding issue was waived and then analyzing issue to determine whether the interest of justice justifies appellate review under Tennessee Rule of Appellate Procedure 4(a)). We conclude that the defendant waived review of the issue by failing to reduce it to writing.

Although an issue is waived, an appellate court may consider it if it rises to the level of plain error. *State v. Cooper*, No. E2011-00590-CCA-R3-CD, 2012 WL 950103, at *4 (Tenn. Crim. App. Mar. 20, 2012) (concluding that an oral amendment to a motion for a new trial which was not reduced to writing was waived and then conducting plain error analysis). However, in the instant case, there has been no allegation of plain error, and the issue has not been briefed. *See Waters v. Coker*, 229 S.W.3d 682, 690 (Tenn. 2007) (holding that an issue not raised in a motion for a new trial was waived and declining plain error analysis when plain error was not alleged or argued); *see also* Tenn. Ct. Crim. App. R. 10(b). In any case, the facts here do not establish plain error.

The Tennessee Supreme Court has noted that the authority to grant plain error relief should "be sparingly exercised." *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007) (quoting Tenn. R.App. P. 13(b), Advisory Comm'n cmt.). Relief should be granted only where it appears that the error was of such magnitude that it probably changed the outcome of the trial. *Id.*; *see also* Tenn. R. App. P. 36(b) (stating that a judgment shall not be set aside unless "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process"); Tenn. R. App. P. 36(b) Advisory Comm'n cmt. (noting that a judgment would be prejudicial to the judicial process if the decisionmaker were "obviously biased"). In analyzing plain error, the court looks to five factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused must not have waived the issue for tactical reasons; and (5) consideration of the error must be necessary to do substantial justice. *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000); *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994).

Here, defense counsel's relationship with the juror was so superficial that he did not recognize her at trial. The juror knew nothing about the defendant in particular, and it is unclear what effect, if any, her relationship with defense counsel was likely to have on the outcome. The defendant has not established that any substantial right was affected or that the error probably changed the outcome of the trial. *Bledsoe*, 226 S.W.3d at 354. We conclude that the defendant's claim that the juror was biased due to her relationship with defense counsel is waived, and the defendant has not demonstrated plain error.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE