# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 5, 2013

## STATE OF TENNESSEE v. ROCHELLE BUSH

**Appeal from the Criminal Court for Shelby County**
**No. 08-05480    Paula Skahan, Judge**

**No. W2011-02721-CCA-R3-CD  - Filed March 25, 2013**

After a trial by jury, the defendant was convicted of especially aggravated kidnapping, a Class A felony, and aggravated robbery, a Class B felony.  She was sentenced to twenty years for the especially aggravated kidnapping and to a concurrent ten years for the aggravated robbery, for a total effective sentence of twenty years.  On appeal, the defendant claims that the evidence was insufficient to support her conviction for especially aggravated kidnapping and that the trial court erred by failing to sentence her to the minimum sentence. For the reasons that follow, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Paul K. Guibao, Memphis, Tennessee, for the appellant, Rochelle Bush.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On August 14, 2008, the defendant, Rochelle Bush, and her accomplice, Nicole Spates, were indicted on one count of especially aggravated kidnapping in violation of Tennessee Code Annotated section 39-13-305, and one count of aggravated robbery in violation of Tennessee Code Annotated section 39-13-402.  The charges stemmed from

conduct committed by the defendant and her partner at an IHOP restaurant on November 19, 2007.

At the defendant's trial on September 6-9, 2011, the State presented the testimony of two witnesses. The victim, Ms. Moneeca Wells, testified that in November of 2007 she was working as a manager of an IHOP restaurant located in Shelby County in Memphis, Tennessee. She testified that she was five months pregnant at the time. The victim testified that on November 19, 2007, two women robbed her restaurant while she was working her shift.

The victim testified that she first encountered the two women when they came into the restaurant and approached her while she was standing near the restaurant's front register. The victim remember that "[w]hen they came in I tried to seat them and they w[ere] trying to s[i]t like close towards the office but that section was closed, so I sat them like over in the middle, and I just sat them and one of the servers waited on them."

The victim testified that she first realized that something was wrong when she went into the back of the restaurant, peeked behind the door to the restaurant's office, and saw that someone was standing behind it. The victim testified that she suddenly "realized maybe somebody was up to something and I tried to pull out [when] they pulled me into the office." The victim testified that after being pulled into the office she realized that there were two individuals standing inside—the same women she had seated earlier.

The victim testified that she "was thrown to the floor and somebody put their feet into my back and told me don't move." The women further told her that if she "move[d] they w[ere] going to stick me with a knife." The victim testified that the women tried to use pepper spray on her, but the spray did not hit her because she managed to cover her face with her jacket. The victim testified that the women asked her for the combination to the restaurant's safe, which was also located in the office. The victim testified that the women threatened her life and repeatedly held a knife to her stomach (where her pregnancy was showing) and threatened to stab her there. The victim testified that the defendant was the one doing "all of the talking," while her partner "didn't say too much."

The victim testified that she gave the women the combination to the safe, and the women opened the safe and removed all of the money (including the rolled change). The victim testified that the women took approximately one thousand dollars from the safe. The victim testified that after they finished taking all of the money, the women spent approximately five additional minutes trying to pry loose a security camera. During this time, they kept the victim trapped under the office desk, and they threatened to kill her if she did not tell them where the videotape was located. The victim testified that she could not

leave during this time period because the women were threatening to stab her, and they were holding a knife toward her stomach. Afterward, the women tied her up with her hands behind her back, and then they duct taped her mouth before running out of the office. As the victim was still freeing herself from the rope, another manager arrived. The police were called and arrived sometime thereafter.

The witness was shown, and she authenticated, video footage taken by two of the restaurant's surveillance cameras. This video footage was played for the jury. The victim testified that video from the first camera depicted the store's front register, and she identified the defendant and her partner as they approached her there. She further testified that the video depicted her seating the pair while they were "looking around." The victim testified that footage from the second video camera depicted the store's office. She identified the defendant and her partner entering that office, pointing at the safe, and then grabbing her as she approached them. The victim testified that the video further depicted the pair throwing her on top of a desk before instructing her to get underneath of it. The victim testified that video depicted the defendant putting her foot on her back. The victim also testified that the video depicted the defendant's partner removing all of the money from the store's safe while the defendant held a knife to her stomach.

The victim testified that the video depicted the women continuing to threaten her with a knife after they had taken all the money out of the safe. The victim testified that the women were "trying to get the video to the camera, the videotape." The victim testified that the women told her that if she did not tell them where the videotape was they would kill her. The victim testified that the video depicted a knife being thrust toward her at various points. The victim testified that the women demanded that she give them her identification, and after examining it for her personal information they told her that if she talked to anyone, they would come to her house and kill her. The victim testified that at this point, the women "pulled something loose" that was connected to the security camera, and the video feed cut off.

The victim testified that sometime after the robbery, she was taken to the police station and spoke with Sergeant Detective Lundy. She was shown several photographic arrays. She identified the defendant as one of the perpetrators from one of these lineups. While on the stand, the victim identified the particular photographic array containing the defendant's picture that she had been shown by police. The victim testified that she had circled the defendant's picture on this array, signed her name next to it, and written "had the knife, pull (sic) me on the floor, threatened me not to tell or they'll kill me." This photographic array was entered into evidence. The victim testified that during the course of the investigation, when she reviewed the video footage of the robbery, she recognized the defendant's partner, Ms. Spates, because Ms. Spates had previously worked at the restaurant.

The victim testified that she did not recognize the defendant's partner during the actual robbery because she had worn a hooded jacket that partially obscured her face from view and had deliberately kept her back toward the victim.

On cross-examination, the victim testified that all of the money taken by the defendant and her partner on the day in question belonged to the IHOP restaurant, not to her. The victim testified that the video shown to the jury indicated that on the day of the robbery she had entered the restaurant's office at 6:34 a.m. The victim testified that the video stopped at 6:40 a.m. The victim testified that she was tied up after the video ended. She testified that after she was tied up and the robbers had departed she "sat there probably like two minutes before [she] started untying" herself. On re-direct examination, the victim testified that she did not want to be "under the counter" on the day of the robbery and that she would have left the office if she had been able to do so.

Sergeant Kevin Lundy testified that he was employed by the Memphis Police Department and that he had been an officer for twenty-three years. He testified that he investigated the robbery of an IHOP restaurant that occurred on November 19, 2007. In the course of that investigation he showed the victim a photographic array containing a photograph of the defendant. Sergeant Lundy testified that the victim identified the defendant as one of the robbers.

Sergeant Lundy testified that he spoke with the defendant after she was in custody, and the defendant gave him an oral and written statement after being advised of and waiving her *Miranda* rights. The defendant's written statement was admitted into evidence and read for the jury. In the statement, the defendant confessed to participating in a robbery of an IHOP restaurant with Nicole Spates on November 19, 2007, at approximately 6:00 a.m. The defendant denied possessing a weapon but acknowledged that her partner "had MACE." The defendant testified that she received $700 from the robbery, and her partner received approximately $200. When asked why she had participated in the robbery, the defendant responded: "Cause I'm crazy and stupid." Sergeant Lundy testified that the defendant read over her written statement after she gave it, and he witnessed her sign each page at the bottom.

Following this testimony, the State rested. The defendant was advised of and waived her right to testify in her own defense pursuant to the procedures established in *Momon v. State*, 18 S.W.3d 152, 162-64 (Tenn. 1999), and the defense rested. The jury was charged and the parties gave closing arguments. The jury retired to deliberate at 4:30 p.m. on September 8, 2011, and returned with a verdict of finding the defendant guilty as charged at 10:54 a.m. the following day.

On November 8, 2011, the defendant filed a timely motion for new trial, which was denied by the trial court on November 21, 2011. A timely notice of appeal was filed afterward, and the matter is now properly before this court for review. We proceed to consider the defendant's claims.

## ANALYSIS

The defendant claims that the evidence is insufficient to support her conviction for especially aggravated kidnapping and that the trial court erred by failing to sentence her to the minimum sentence. For the reasons that follow, we find these claims to be without merit. We affirm the judgments of the trial court.

### I.

The defendant claims that the evidence is insufficient to support her conviction for especially aggravated kidnapping. "When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (2011); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012). The State must be afforded the strongest legitimate view of the evidence, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the State. *See id.* The jury, not a reviewing court, is responsible for assessing the credibility of the witnesses, deciding what weight to accord their testimony, and reconciling any conflicts in the proof; a reviewing court may not re-weigh the evidence or draw different inferences from that evidence than those drawn by the jury. *See id.*

The defendant in this case challenges only her conviction for especially aggravated kidnapping. "Especially aggravated kidnapping is false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-305 (a)(1). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a).

The victim's direct testimony contains all of the evidence necessary for a reasonable jury to have found the essential elements of the crime of especially aggravated kidnapping beyond a reasonable doubt. The victim testified that on November 19, 2007, she was working as a manager at an IHOP restaurant when someone pulled her into the restaurant's

office. This individual threw her onto the floor and told her that if she moved, she would "stick" her with a knife. This individual and her partner demanded the number to the store's safe, which the victim provided. The victim testified that the pair stole approximately one thousand dollars from that safe. After doing so, the pair spent approximately five additional minutes trying to disable, remove, or destroy the office's surveillance camera—keeping the victim trapped under a desk all the while. The victim testified that she was five months pregnant at the time, and she was prevented from leaving by the defendant and her partner, who held a knife to her stomach and threatened to kill her. The victim testified that after the defendant and her partner disabled or removed the camera, they tied her up and duct taped her mouth shut. Before leaving, the two told the victim that they knew where she lived and would kill her if she told anyone what had transpired.

The victim testified that she had seen both the defendant and her partner earlier in the day, when they approached her at the restaurant's front register. The victim testified that during the police investigation she identified the defendant as one of the two perpetrators from a photographic lineup. The victim also identified the defendant as one of the perpetrators from the stand during the trial.

Viewed in the light most favorable to the State, the victim's testimony, standing alone, provides sufficient basis for a reasonable jury to have found beyond a reasonable doubt that the defendant knowingly interfered with the victim's liberty (by moving her into the restaurant's office and trapping her underneath the desk) and that she accomplished this task using a deadly weapon (*viz.*, a knife). In addition, the victim's testimony on all the essential elements of especially aggravated kidnapping is supported by either video that was captured by one of the restaurant's security cameras or by the written confession that the defendant subsequently provided to the police—and in some cases by both. The defendant's claim that the evidence is insufficient to support her conviction is denied.

Although the defendant casts her claim as one concerning the sufficiency of the convicting evidence, it is clear from reviewing the arguments contained in her brief that she is in fact attempting to assert a different claim—that the trial court erred by failing to properly instruct the jury. The defendant's "sufficiency" argument cites primarily to our supreme court's recent decision in *State v. White*, 362 S.W.3d 559 (Tenn. 2012).

Prior to *White*, the appellate courts of this state applied a separate due process test to kidnapping convictions that were accompanied by another felony. *See State v. Dixon*, 957 S.W.2d 532, 533 (Tenn. 1997); *State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991). Initially, separate convictions for kidnapping and an accompanying felony were deemed to violate a defendant's right to due process when the kidnapping was essentially "incidental" to the other felony. *Dixon*, 957 S.W.2d at 533. Over time, the law became clear that any

"restraint in addition to that . . . necessary to consummate rape or robbery [might] support a separate conviction for kidnapping" if "the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.* at 535 (citing *Anthony*, 817 S.W.2d at 306.). Because the additional analysis required by *Anthony* and *Dixon* was not considered an actual element of the kidnapping statute, but rather a component of due process, determining whether restraint beyond that necessary to accomplish the felony was in fact used (and if so, whether the remaining *Dixon* conditions were satisfied) was deemed to be "purely a question of law." *State v. Cozart*, 54 S.W.3d 242, 247 (Tenn. 2001). No jury determination concerning the issue was necessary, and hence no jury instruction concerning the issue was required. *Id.*

In *White*, our supreme court reversed this position, overruled *Anthony* and its progeny, and eliminated the separate due process test previously applied to kidnapping convictions that were accompanied by separate felonies. *White*, 362 S.W.3d at 578. After thoroughly reviewing its earlier decisions in light of scholarly work and practice in other jurisdictions, the court explained: "While the Court in *Anthony* rested its holding on constitutional grounds, legislative intent and the strict construction of criminal statutes were also guiding principles." *Id.* at 576. In light of certain amendments to the criminal code that had occurred in the intervening years, the court ultimately concluded that "the kidnapping statutes, 'construed according to the fair import of their terms,' Tenn. Code Ann. § 39-11-104, and coupled with their derivation from the Model Penal Code, evince a legislative intent to punish as kidnapping only those instances in which the removal or confinement has criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape." *Id.* at 576-77. Our supreme court directed trial courts to "ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony," and provided trial courts with model instructions to give to juries to assist in this task. *Id.* at 578. In short, in *White*, the issue of whether dual convictions for kidnapping and an accompanying felony were permissible was transformed from an issue of pure law to be decided solely by judges to an issue of fact to be decided by properly-instructed juries.

The defendant, who was tried in 2011, neither requested not received the jury instructions required by *White*. The defendant's appeal was pending while the decision was filed. While the *White* court stated that its ruling did not require retroactive application, *see id.* at 578, our court has carefully examined the issue and determined that "retroactive" application is appropriate with respect to cases that were already in the "appellate pipeline" at the time *White* was decided. *State v. David Earl Scott*, No. E2011-00707-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 923 (Tenn. Crim. App. Nov. 14, 2012). As this court explained in *Scott*:

The court's statement that the ruling is not entitled to retroactive application would, at first blush, suggest that it is applicable only to those cases tried after March 9, 2012, the date on which the opinion was filed. We note, however, that the court has remanded a number of cases for reconsideration in light of its ruling in *White*, *see, e.g., State v. Robert Fusco*, No. M2012-01724-SC-R11-CD (Tenn. Mar. 23, 2012), suggesting that it intended retroactive application of the ruling to those already-tried cases in the appellate pipeline, that is pending direct appeal, at the time it was filed and that its use of the word "retroactive" was intended to prevent use of the ruling for collateral attack. The court opted for similar, limited retrospective application of its ruling in *State v. Burns*, 6 S.W.3d 453, 471 (Tenn. 1999), a case that also involved jury instruction error. *Wiley v. State*, 183 S.W.3d 317, 327 (Tenn. 2006).

*Id.* at **31-32. Working under the assumption that we correctly gleaned our supreme court's intent in *Scott* and other prior cases, we will proceed to analyze the defendant's claim as one concerning an omitted jury instruction.

As such, as an initial matter we must decide whether the evidence presented at trial was sufficient to fairly raise the issue of whether the degree of interference with the victim's liberty was significant enough to support a separate conviction for kidnapping. Trial courts are only obliged to instruct the jury on issues of law that apply to the case at hand; there is no duty to charge an issue that has not been fairly raised by the evidence. *See State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995); *State v. McPherson*, 882 S.W.2d 365, 374 (Tenn. Crim. App. 1994); *see also* T.C.A. § 39-11-203 (c) ("The issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof."). Here, the evidence presented at trial reflects that the especially aggravated kidnapping at issue was committed by the exact same perpetrators and at the exact same location as the aggravated robbery for which the defendant was also convicted. The two crimes were only separated by a matter of minutes, perhaps even seconds. Considering these facts and the record as a whole, we conclude that the issue of whether the victim was confined to a greater degree than that necessary to commit the aggravated robbery was fairly raised by the evidence.

Next, we consider whether the trial court's failure to provide a *White* instruction was error. The record reflects that the jury in this case was not instructed that in order to find the defendant guilty of especially aggravated kidnapping, it must find that the victim's confinement exceeded that necessary to commit the accompanying robbery. As we have already determined, the issue was fairly raised by the evidence that was presented at trial.

Consequently, we conclude that the defendant's jury was not properly instructed.

Finally, we must consider whether the instructional error that occurred was harmless beyond a reasonable doubt. The undisputed evidence presented at trial reflected that the defendant and her partner duct taped the victim's mouth and bound her hands with rope only after they had already taken all of the money from the store's safe. The undisputed evidence reflects that the defendant and her partner kept the victim confined for an additional period of time—more than five minutes[1]—after they had completely removed the money, while they were apparently attempting to cover their tracks by finding and destroying evidence of their recent crime (*viz.*, the video footage of the robbery which they correctly presumed had been taken by one of the restaurant's surveillance cameras). In light of the undisputed proof that (1) the victim was still confined at knife point for at least five long, terrifying minutes after the perpetrators had successfully stolen all of the money from the store's safe; and (2) the victim was bound and gagged by her captors only after the theft had been completed; we conclude that, properly instructed, the jury would still have concluded that the victim's confinement went well beyond that necessary to accomplish the robbery and that its verdict would have been the same.

Consequently, we hold that the omission of a *White* instruction in this case was harmless beyond a reasonable doubt. The defendant's claim that the evidence is insufficient to support her conviction based on *White*—which we have construed as a claim that the trial court erred by failing to properly instruct the jury as discussed in that case—is denied.

## II.

The defendant contends that the trial court erred by failing to sentence her to the minimum sentence permissible under the law with respect to her conviction for especially aggravated kidnapping. We disagree.

A trial court's in-range sentencing decisions are entitled to a presumption of reasonableness and are reviewed under an abuse of discretion standard. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The defendant does not dispute that her twenty-year sentence for her especially aggravated kidnapping conviction was within the permissible range for a violent offender convicted of a Class A felony. Consequently, we begin with the presumption that her twenty-year sentence is reasonable.

---

[1] The video contained in the record reflects that the robbery itself was completed in less than two minutes, but the defendants continued to confine, interrogate, and torment the victim for an additional four and a half minutes before disabling the restaurant office's security camera.

The defendant has presented nothing to this court that would rebut this presumption. The defendant merely argues that the trial court failed to properly weigh the aggravating and mitigating factors. The defendant urges that the trial court gave short shrift to her lack of criminal history and her showing of remorse, while over-emphasizing the fact that the defendant was the leader of the offense. Even if this court were inclined to agree with the defendant's assertions—which it is not—this fact would still fail to provide us with any grounds upon which to reverse the defendant's sentence. If a trial court's complete misapplication of an enhancing or mitigating factor cannot provide a basis for reversal of a defendant's sentence, *see id.* at 709, it follows *a fortiori* that a trial court's over-emphasis or under-emphasis of various properly-found factors, standing alone, provides no basis for reversal of a defendant's sentence. The defendant's claim that the trial court erred by failing to sentence her to the statutory minimum for her especially aggravated kidnapping conviction is denied.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE