# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 26, 2016 Session

## STATE OF TENNESSEE v. LISA ESTELLE ELLIOTT

### Appeal from the Criminal Court for Campbell County
### No. 16462     E. Shayne Sexton, Judge
_____

### No. E2015-02263-CCA-R3-CD – Filed January 26, 2017
_____

A Campbell County Grand Jury indicted the defendant, Lisa Estelle Elliott, on one count of second degree murder as the result of the shooting and death of her fiancé. Following trial, a jury convicted the defendant of the lesser-included offense of voluntary manslaughter, for which she received a four-year sentence to be served in confinement. On appeal, the defendant argues the trial court erred when denying her motion for mistrial due to a prejudicial narrative objection made by the State. The defendant further contends that due to her lack of a criminal history, strong educational background, and continuous work history, the trial court erred in denying her request for an alternative sentence. Based on our review of the record, submissions of the parties, and pertinent authorities, we disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Michael G. Hatmaker, Jacksboro, Tennessee, (on appeal and at trial) and Brent Gray (trial only) for the appellant, Lisa Estelle Elliott.

Herbert H. Slatery III, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Jared R. Effler, District Attorney General; and Courtney Stanifer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

Early the morning of February 2, 2014, the defendant shot and killed the victim, Larry David Champlin, in the back bedroom of their home. The victim's adult daughter

and two small children were home at the time. Following a call reporting a domestic disturbance with gunshots, several law enforcement officers responded to the crime scene, including Deputy David Wormsley and Lieutenant John Long, both with the Campbell County Sheriff's Office. Upon their arrival, the officers brought all occupants of the home to the living room to wait during their investigation. While standing in the living room, the defendant reported that the victim was angry because she poured out his liquor. The defendant also made these unsolicited statements: "is he alive, I believe he's just drunk;" "I shot him, he's dead, isn't he;" "just take me to jail, I killed him;" "is he dead, who cares, I don't care if he is or not;" and "go ahead and take me – put me in the car, take me on to prison, let me die there."

The officers found the victim lying on the floor of the master bedroom next to the bed. The bed was slightly askew, and there was a bloody handprint on it. A nearby lamp had been overturned, and there was a .38 caliber revolver on a shelf in the closet. The bathroom door was open, and there was blood spatter on the shower, floor, and door handle. The victim had an apparent gunshot wound on the left side of his neck. An autopsy later confirmed the victim died as a result of a gunshot that entered the left side of his neck, travelled through his chest area, and then became lodged in his back.

The officers put the defendant, who smelled strongly of alcohol, in a patrol car and took her to the hospital to have her blood drawn for alcohol and toxicology testing. The shooting occurred around 4:45 a.m., officers arrived at the scene around 5:00 a.m., and the defendant gave a blood sample around 9:25 a.m. The defendant's blood alcohol level was .06 when she gave the blood sample and would have been approximately .14 at the time she shot the victim. The victim had a blood alcohol level of .22 at the time of his death. Toxicology tests were negative for both the defendant and the victim, indicating they did not have illegal drugs in their systems at the time of the shooting.

At trial, the defendant theorized the victim shot himself following a domestic altercation. On cross-examination, the defendant's counsel questioned Lieutenant Long about his investigation and asked whether he learned the defendant and victim had gotten into an argument that morning. Lieutenant Long repeatedly answered that he did not know because he was not present at the time of the shooting. After continued questions about whether during his investigation he learned a struggle had occurred, the State objected, stating:

> Your honor, I object again. He's insinuating this is something the defendant said by asking a preceding question related to the defen – or excuse me – the witness interviewing the defendant. He's trying to back door without having her take the stand and be subject to cross-examination, is what all of this entire line of questioning is about.

The trial court sustained the objection. The defendant subsequently moved for a mistrial, arguing the State insinuated in the presence of the jury that the defendant has a duty to testify. The trial court denied the motion but cautioned on the dangers of making narrative objections. The trial court further pointed out that prior to the start of trial, it told the jury the defendant does not have to testify, and the jury would be told this again prior to deliberating.

As part of its case-in-chief, the State called Karen Champlin, the victim's ex-wife, as a character witness. The State also called Deputy Wormsley, Lieutenant Long, and several expert witnesses. The defendant called James McCall, another officer with the Campbell County Sheriff's Office, as her only witness. Officer McCall confirmed many of the details of the investigation that were already in evidence, including the fact that officers were called to the scene in response to a domestic disturbance. The defendant did not testify.

At the close of all proof, the trial court charged the jury. As part of its instructions, the trial court again told the jury the defendant had the right not to testify, and an adverse inference may not be drawn from the defendant's decision not to testify. After deliberations, the jury found the defendant guilty of voluntary manslaughter.

At a subsequent sentencing hearing, the trial court imposed a within-range sentence of four years in the Tennessee Department of Correction and denied the defendant's request for probation. The defendant filed a motion for a new trial and resentencing that was denied by the trial court. This timely appeal followed.

On appeal, the defendant argues the trial court erred when denying her motion for mistrial and her request for alternative sentencing. The State argues the trial court properly denied the defendant's motion for mistrial and appropriately ordered the defendant to serve her four-year sentence in confinement. For the reasons set forth herein, we agree with the State.

*Analysis*

**A.    Denial of Motion for Mistrial**

The defendant argues the trial court abused its discretion by denying her motion for mistrial made during the cross-examination of Lieutenant Long. According to the defendant, when objecting to the defendant's questioning of Lieutenant Long, the State improperly implied the defendant had a duty to testify at trial. We disagree.

Courts should only declare a mistrial in a criminal matter when required by manifest necessity. *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). A mistrial is an appropriate remedy when the trial cannot continue or a miscarriage of justice would result if it did. *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). The decision to grant a mistrial is within the sound discretion of the trial court, and this Court will not interfere absent a clear abuse appearing on the face of the record. *State v. Hall*, 976 S.W.2d 121, 147 (Tenn. 1998). The party seeking the mistrial has the burden of establishing the necessity for it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App.1996).

During the defendant's cross examination of Lieutenant Long, the defendant asked, "Did you not learn through your investigation that a struggle had occurred?" The State objected, stating:

> Your honor, I object again. He's insinuating this is something the defendant said by asking a preceding question related to the defen – or excuse me – the witness interviewing the defendant. He's trying to back door without having her take the stand and be subject to cross-examination, is what all of this entire line of questioning is about.

The trial court sustained the objection.

The defendant subsequently moved for a mistrial. The defendant argued that by stating she was improperly attempting to get her own statements into evidence without testifying and becoming subject to cross-examination, the State "convey[ed] to the jury an obligation on behalf of [the defendant] to testify." The State argued its objection was proper and based on Rule 803 of the Tennessee Rules of Evidence. The trial court denied the motion, ruling:

> THE COURT:       Well, let me – let me intervene here a little bit. That is – that's one of the dangers of narrative objection when we get into too much discussion. I would caution both sides in making objections. Simply make the objection as to whatever it is and then we can go further if we need to, but I'm – do you have anything else to add?
>
> [DEFENSE COUNSEL]:   No.
>
> THE COURT:       Okay. Of course, the Court has already advised the jury that the defendant does not have an obligation to testify, I will do it again. I'm going to find that does not rise to the level of granting a mistrial,

- 4 -

so the motion for mistrial is overruled and, of course, it's part of the record now.

Our review of the record shows that the trial court had already advised the jury that the defendant does not have an obligation to testify. Prior to the start of trial, the trial court preliminarily instructed the jury that "[t]he defense, however, is not required to put on proof. [The defendant] is not required to testify, nor is she required to call any witnesses in her defense." When charging the jury following the conclusion of all proof, the trial court similarly stated, "The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and that burden never shifts but remains on the State throughout the trial of the case. The defendant is not required to prove her innocence." The trial court further instructed the jury:

> The defendant has not taken the stand to testify as a witness, but you shall place no significance on this fact. The defendant is presumed innocent, and the burden is on the State to prove her guilt beyond a reasonable doubt. She is not required to take the stand in her own behalf, and her election not to do so cannot be considered for any purpose against her or any inference – nor can any inference be drawn from such fact.

The trial court denied the defendant's motion for mistrial and, on two separate occasions, instructed the jury regarding the State's burden of proof and the defendant's right not to testify. The trial court was clear in its instruction that the jury may not draw an adverse inference from the defendant's decision not to take the stand on her own behalf, and we presume the jury followed this instruction. *See State v. Young*, 196 S.W.3d 85, 111 (Tenn. 2006). Based on our review of the record, "manifest necessity" did not require a mistrial. The State's narrative objection did not prejudice the defendant in a manner that would result in the miscarriage of justice should the trial continue. Moreover, the trial court took ample curative steps following the State's narrative objection. The defendant has not met her burden of establishing the necessity for a mistrial and is, therefore, not entitled to relief on the issue. We affirm the trial court's denial of the defendant's motion for mistrial.

### B.      Sentencing

The defendant further contends the trial court erred when it denied her request for an alternative sentence. According to the defendant, she should have received a sentence other than continuous incarceration because she does not have a prior criminal record, has a college education and a master's degree, and has worked for the past thirteen years as a special education teacher. Again, we respectfully disagree.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle,* our Supreme Court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the 2005 amendments to the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1)     The evidence, if any, received at the trial and the sentencing hearing;
(2)     The presentence report;
(3)     The principles of sentencing and arguments as to sentencing alternatives;
(4)     The nature and characteristics of the criminal conduct involved;
(5)     Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6)     Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7)     Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise,* 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise,* 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter,* 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the

"advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter,* 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds, State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

When imposing a sentence of full confinement, the trial court should consider whether:

> (A)  Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B)  Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant [.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2),(4).

The defendant was convicted of voluntary manslaughter, a Class C felony, and was sentenced as a Range I, standard offender. The appropriate sentencing range is three to six years. Tenn. Code Ann. § 40-35-112(a)(3). As a standard offender convicted of a Class C felony, the defendant is an appropriate candidate for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6).

In the present case, the trial court thoughtfully considered each factor mandated by Tennessee Annotated section 40-35-210 prior to imposing a sentence of four years to be served in the Tennessee Department of Correction. The trial court reviewed the presentence report and considered the victim impact statement, evidence presented at trial, and evidence presented during the sentencing hearing. The trial court noted the defendant does not have a prior criminal history and found only one applicable enhancement factor – the defendant's possession and employment of a firearm during the

offense. *See* Tenn. Code Ann. § 40-35-114(9). The trial court did not find any applicable mitigating factors. Due to the enhancement factor applied, the trial court determined the proper sentence to be four years.

The trial court next considered whether the defendant is an appropriate candidate for alternative sentencing. When doing so, the trial court found the defendant was "totally unrepentant" from a responsibility standpoint, and her version of the events transpiring the night of the victim's death was "incredible." The trial court weighed the defendant's failure to accept responsibility heavily against her request for alternative sentencing.

The trial court then considered whether confinement is necessary to avoid depreciating the seriousness of the offense and found that "giving the defendant probation would depreciate the seriousness of the offense." Based on this finding, the trial court denied the defendant's request for alternative sentencing and offered this analysis:

> This combination of firearms and alcohol is just gonna – is just destined to produce tragic results and sometimes, courts are responsible to send precedential messages to communities. This type of behavior, although tragic, is almost predictable, and letting this type of sentence – letting this type of crime go without proper punishment would definitely depreciate the seriousness of this act, and I find that that particular factor is the greatest weight in imposing this four-year sentence as a standard range one to be served. This Court is denying the defendant's request for alternative sentencing.

Our review of the record reveals that the trial court's within-range sentence of four years in confinement in the Tennessee Department of Correction was properly based on the purposes and principles of the Sentencing Act. The trial court discussed the enhancement and mitigating factors on the record and thoughtfully considered the defendant's request for an alternative sentence, ultimately finding probation to be unacceptable due the seriousness of the offense and the defendant's utter failure to take responsibility for her actions. The trial court did not abuse its discretion when denying the defendant's request for alternative sentencing. We affirm the sentence imposed by the trial court.

*Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE